**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

FILED

JAN – 5 2005

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

WENDELL K. ASH,                    )
    Petitioner,                        )
                      )
v.                                 )    **Civil Action No. 5:04-0069**
                      )
THOMAS MCBRIDE, Warden, *et al.*,  )
    Defendants.                        )

## PROPOSED FINDINGS AND RECOMMENDATION

On January 27, 2004, Plaintiff, an inmate at the Mount Olive Correctional Complex [MOCC],

and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to 42

U.S.C. § 1983.[1] (Document No. 1.) Essentially, Plaintiff alleges that the Defendants failed to provide

adequate security, supervision, and medical care in violation of the Eighth Amendment. By Standing

Order filed on January 28, 2004, this matter was referred to the undersigned United States Magistrate

Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant

to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.)

## PROCEDURE AND FACTS

### A.    Plaintiff's Complaint

Plaintiff alleges that on November 7, 2003, as he was leaving the State Shop Sub-Station

located in the MOCC gymnasium, he was attacked by another inmate. (Document No. 1, p. 7.) The

inmate who attacked Plaintiff, Inmate Heard, and Defendant Peggy Giacomo, Storekeeper 2, were

present at the Shop when Plaintiff visited the store. (Id.) He states that Defendant Peggy Giacomo

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held
to a less stringent standard than if they were prepared by a lawyer and therefore, they are
construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652
(1972).

witnessed Inmate Heard threatening Plaintiff, but said nothing and did nothing to stop him from leaving his assigned work area, shortly before Plaintiff completed his purchase. (Id.) After exiting the Shop, Plaintiff was attacked by Inmate Heard who had been waiting for him outside the gymnasium door. (Id.) Plaintiff received a cut to his face above his left eye which was stitched by Defendant Larry Williamson, M.D. (Id., p. 8.) After applying the sutures, Plaintiff states that Defendant Dr. Williamson advised him that his eye was swollen and that if it continued to swell, the stitches may need readjusted. (Id.) Following his medical examination, Plaintiff was charged with fighting in violation of MOCC Disciplinary Rule 2.08 and placed in Detention, Quilliams II, where he was confined pending the investigation of the incident.[2] (Id., pp. 8-9 and Exhibit C.)

During the night of November 7, 2003, Plaintiff's eye swelled shut and he experienced "extensive pain behind [his] eyeball." (Id., p. 10.) He requested pain medication from a nurse

---

[2] The details of the underlying charge are described in the Violation Report as follows:

I Recreation Specialist Clinton Ryan on 07 November 2003 at approximately 1410 hours was sitting post outside the recreation office when I saw a verbal argument between Kenneth Heard # 17256 and Wendell Ash # 18784 take place at the gymnasium State Shop. The two inmates were in each others face when I heard Inmate Heard say "I'll meet you outside." Inmate Heard left the gymnasium and exited out the double doors beside Correctional Program Supervisor's Valerie [ ] office. Inmate Ash was still at the State Shop for supplies. When I/M Ash left the State Shop he exited through the same double doors as mentioned above. I/M Ash turned right walking towards the breezeway when I seen Inmate Heard throw a punch towards Inmate Ash. I did not see the punch physically hit Inmate Ash. After the punch was thrown a crowd of inmates went out the double doors. I/M Heard came back in the gym and into the State Shop he then exited the building again. I called Central Control to let Shift Commander Lt. Pettey know what I have witnessed. He advised me to write an Incident Report of what I have saw and to tell State Shop Worker Peggy Giacomo to do the same. She advised me that she did not hear nothing.

(Document No. 12, Exhibit G to Exhibit 2.)

distributing medication who informed Plaintiff that he would contact Defendant Dr. Williamson. (Id.) The nurse later advised Plaintiff that he had attempted to telephone Dr. Williamson at home and left a written message for him upon his return to the MOCC the next day. (Id.) Five days later, Plaintiff had received no response from Defendant Dr. Williamson or any other medical personnel to his complaints and he continued to experience pain in his eye. (Id.) He again advised the nurse of his pain and dissatisfaction with Defendant Dr. Williamson's lack of response. (Id.) During the night of November 14, 2003, Plaintiff experienced a nosebleed which continued through the early morning hours. (Id., p. 11.) He communicated his medical condition to a nurse who responded that "he would inform the day shift, medical crew." (Id.) No one, however, examined Plaintiff or otherwise responded to his medical complaints. (Id.)

On November 18, 2003, Plaintiff appeared before Institutional Magistrate William Kerns for a hearing upon the charge of fighting. (Document No. 13, Exhibit 1, Hearing Report.) The charge against Plaintiff was dismissed by Magistrate Kerns "due to lack of evidence that the defendant participated in a fight."[3] (Id.) Plaintiff was returned to the general prison population on November 24, 2003. (Document No. 1, p. 13.)

Plaintiff filed his Complaint in this matter on January 27, 2004, naming as Defendants the following individuals employed at MOCC on November 7, 2003: Thomas McBride, Warden; Peggy Giacomo, Storekeeper 2; Clinton Ryan, Recreation Specialist; Lt. Lawrence E. Petley, Correctional

---

[3] During the hearing, Plaintiff requested that another inmate testify on his behalf. (Document No. 13, Exhibit 1, Hearing. Report.) His request was denied however, due to security concerns. (Id.) Nevertheless, Magistrate Kerns gave Plaintiff the opportunity to proffer a summary of the inmate's testimony, but Plaintiff declined. (Id.) Magistrate Kern's decision was based upon the written reports and the testimony of Reporting staff Recreation Specialist Clinton Ryan, Peggy Giacomo, and Defendant. (Id.)

3

Officer; Lt. Perry, Correctional Officer; Larry Williamson, M.D.; and John and Jane Doe, all in their individual and official capacities. (Document No. 1.) Plaintiff first complains that Defendant Peggy Giacomo failed to take appropriate measures to prevent Inmate Heard from assaulting him. (Id., p. 4.) He further complains that she provided false statements in her report of the incident concerning Plaintiff's assault by Inmate Heard. (Id., p. 14.) Second, he alleges that Defendant Warden Thomas McBride failed to provide adequate security in the recreation building and on the recreation yard in breach of his duty to "provide a safe and secure envi[ron]ment for which the Plaintiff to live." (Id., pp. 4, 14.) Third, Plaintiff alleges that Defendant Dr. Williamson failed "to provide appropriate follow up medical care" for his injuries sustained from the assault. (Id.) Finally, he contends that Defendants Lt. Pettey and Lt. Perry failed to supervise the inmate recreation areas. (Id.) Although he does not state a specific claim against Defendant Clinton Ryan, he requests damages from him for his "part in the pain and suffering of the Plaintiff." (Id., p. 14.) Plaintiff further seeks compensatory and punitive damages and injunctive relief. (Id., p. 14.)

### B.      State Defendants' Motion to Dismiss

On March 4, 2004, Defendants Thomas McBride, Peggy Giacomo, Lt. Pettey, Lt. Perry and Clinton Ryan [the State Defendants], by counsel, Charles Houdyschell Jr., Assistant Attorney General, filed their Waiver of Reply and Alternative Motion to Dismiss and Memorandum in Support. (Document Nos. 12-13.) The State Defendants aver that Plaintiff's Complaint must be dismissed for his failure to exhaust all available administrative remedies pursuant to 42 U.S.C. § 1997e(a), prior to filing this civil action. (Document No. 13, pp. 2-6.) The State Defendants concede that Plaintiff submitted some grievances with respect to his assault, but aver that "his complaint focused on the fact that he was not satisfied with the level of punishment given to his assailant.",

4

rather than the claims set forth in his instant Complaint. (Id., p. 3.) Moreover, many of the documents Plaintiff submitted "were not proper grievance documents," and therefore, were rejected at various stages of the administrative remedy process. (Id.) Plaintiff thus, has not completely exhausted any of his claims raised in this civil action. (Id.)

Plaintiff filed his response to the State Defendants' Motion on March 9, 2004, in which he states that he properly exhausted all available administrative remedies.[4] (Document No. 15.) He states that as evidenced by Exhibits V, X-1, X-2, X-3, X-4, and W-1 to his Complaint, he properly exhausted by submitting G-1 and G-2 Grievance Forms to his Unit Manager and Defendant Warden McBride, and an appeal of the Warden's decision to the Commissioner. (Id., p.1) With respect to his medical claims, he states that because "[n]either the prison's warden nor the Commissioner have authority to over-ride the decisions of medical care concerning inmate patients . . . the grievance system is complete at the stage one level to the C.M.S. Administrator."[5] (Id., p. 2.) Plaintiff further states:

> The follow-up medical attention the Plaintiff was seeking was needed days after the attack upon Plaintiff. What good was a warden's reply going to be more than

---

[4] On March 11, 2004, Notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendants' Motion to Dismiss and submit exhibits and affidavits supporting his claims. (Document No. 17.)

[5] The undersigned notes that Plaintiff filed on November 19, 2003, a G-1 Grievance Form to Medical Administration concerning Defendant Dr. Williamson's failure to provide follow-up care to his injured eye. (Document No. 1, Exhibit N.) The MOCC Medical Administrator responded to Plaintiff's grievance on November 25, 2003, stating that although the nurse who removed his stitches observed no evidence of permanent eye damage, he nevertheless could request to see a doctor if he believed an exam was necessary. (*Id.*)
    The undersigned further notes that on June 11, 2004, Plaintiff filed further copies of his administrative remedies. (Document No. 30.) The subject matter of these grievances however, is beyond the scope of this action and are not relevant to the Court's decision of whether Plaintiff exhausted his administrative remedies.

30 days after the Plaintiff was assulted. What good was the Commissioner's reply going to be more than 60 days after the assault upon the Plaintiff? By this time, the Plaintiff's physical injuries were well on their way to healing.

The Plaintiff needed medical attention during the week his eye was swollen shut. The Plaintiff needed medical attention when his eye socket was in great pain. The Plaintiff needed medical attention when blood was running from his nose, not 30 to 60 days later.

(Id., pp. 2-3.) Accordingly, Plaintiff requests that the Court find that he has exhausted his administrative remedies and deny the State Defendants' Motion to Dismiss. (Id., p. 3.)

### C. Defendant Larry Williamson's Motion to Dismiss

On March 15, 2004, Defendant Larry Williamson, by counsel, John D. McChesney and Edward J. McNelis, III, filed his Answer, Motion to Dismiss and Memorandum in Support. (Document Nos. 18-20.) Defendant Dr. Williamson moves the Court to dismiss Plaintiff's Complaint for his failure to exhaust administrative remedies and state a claim upon which relief can be granted. (Document No. 20, pp. 1-2.) Defendant Dr. Williamson acknowledges that Plaintiff's grievances attached to his Complaint in part address his medical claim, but contends that he did not pursue his claims "through the last level of appeal." (Id., p. 1.) Alternatively, Defendant Dr. Williamson avers that Plaintiff's allegations that he was denied medical care do not demonstrate "how Dr. Williamson would have known about his situation or make clear the nature of the defendant's state of mind." and therefore, should be dismissed for failure to state a claim under the Eighth Amendment upon which relief can be granted. (Id., p. 2.)

Plaintiff filed his "Answer to Defendant's (Larry Williamson) 'Defenses' and Motion to 'Dismiss'" on March 17, 2004. (Document No. 21.) In his Answer, Plaintiff reiterates the claim presented in his Complaint that Defendant Dr. Williamson failed to provide follow-up care to the cut above his eye and requests that the Court deny Defendant Dr. Williamson's Motion to Dismiss.

6

(Document No. 21, p. 4.)

### D.    Plaintiff's Motion for Default Judgment

On March 17, 2004, Plaintiff filed his Motion for Default Judgment, in which he requests that the Court enter default judgment against Defendant Dr. Williamson for his failure to file a timely Answer or other response to his Complaint. (Document No. 22.) Plaintiff states that service of his Complaint was effected on Defendant Dr. Williamson on February 24, 2004, and that he did not submit his Answer "in the allotted twenty day period." (Id., p. 1.) He therefore contends that he is entitled to judgment against Defendant Dr. Williamson in the amount of $1,000.00. (Id.)

### E.    Plaintiff's Motion for Injunction

On June 8, 2004, Plaintiff filed a Motion for Injunction, in which he requests an Order from the Court barring Institutional Magistrate William Kerns "from presiding over any hearings involving the Plaintiff until after this litigation has ended." (Document No. 29, p. 2.) In support of his Motion, Plaintiff states that Magistrate Kerns "is using his authority to reap retaliation upon [him]" by refusing to provide Plaintiff with copies of MOCC Policy Directives he required to prepare his defense in un-related institutional disciplinary proceedings. (Id.) He further states that the Defendants, collectively, and their subordinates, are retaliating against him for filing this civil action, by reporting false disciplinary rule violations and not allowing him "any time in the prison law library." (Id., p. 1.) He requests that the Court enter an Order barring "the defendants, and those under their control, from further acts of retaliation." (Id.)

### F.    Defendant Larry Williamson's Motion for Summary Judgment

On July 23, 2004, Defendant Dr. Williamson, by counsel, filed his Motion for Summary Judgment with Memorandum and Affidavit in Support. (Document Nos. 32-34.) Defendant Dr.

Williamson states that the undisputed facts in this case reveal that he examined Plaintiff shortly after his injury, assessed his medical needs, provided stitches for his wound, and advised him of instructions on follow-up care. (Document No. 33, p. 6.) Concerning the follow-up instructions, Dr. Williamson specifically informed Plaintiff that he may experience loss of consciousness and how to seek further medical care if needed. (Id., p. 2 and Document No. 34, Affidavit, ¶ 6.) He further directed that Plaintiff's sutures be removed in seven days, that he receive a tetanus shot, and that he apply ice to the injured area for twenty-four hours. (Document No. 33, p. 2.) Subsequent to this examination, Dr. Williamson was neither personally informed by Plaintiff, nor received any indication that he "suffered complications" from his injury.[6] (Id.) Dr. Williamson contends therefore that he "had no knowledge of any other ailment of the plaintiff that needed care." (Id., p. 6.) Plaintiff's sutures were removed on November 17, 2003, by a nurse who observed no signs of infection, swelling, redness, or drainage. (Id., p. 2 and Document No. 34, ¶ 8.) No cause therefore existed for Dr. Williamson to re-examine Plaintiff's injury. (Id.) Plaintiff later submitted a grievance

---

[6] In his Affidavit, Defendant Dr. Williamson states:

I do not recall ever receiving any indication subsequent to November 7 that the plaintiff was having any problem whatsoever with this injury. I do not know whether the plaintiff verbally informed any nurses or other individuals of a problem associated with this injury, but I do not recall anyone notifying me that the plaintiff was in extreme pain or was otherwise suffering unduly. Furthermore, no evidence in the plaintiff's medical records indicates that I received such notification. Prison regulations require prisoners to fill out written health services request forms if they wish to see a doctor or other health care provider. Given the regimentation necessary to run a maximum security facility, neither I nor my patients have the luxury of moving freely about the prison in order to arrange for medical examinations or other health care. Obviously, I cannot prescribe pain killers to a patient without seeing him. The plaintiff, like other inmates, has access to over-the-counter pain medications, such as Tylenol.

(Document No. 34, ¶ 7.)

8

requesting to see an eye specialist. (Id.) Neither Dr. Williamson nor any other health care provider concluded however that Plaintiff's injury warranted further examination and he was not referred to a specialist. (Id., p. 2.) Dr. Williamson suggests that Plaintiff's allegations against him merely constitute "[a] disagreement between a trained doctor and a lay person" and do not rise to the level of an Eighth Amendment violation. (Id.) He states that although he was not provided an opportunity to assess Plaintiff's injury for the need of pain medication, Plaintiff had access to over the counter painkillers. (Id.) Even had Plaintiff possessed a "genuine medical need and assuming that he informed nurses or correctional officers of this need. . . plaintiff may not hold [him] responsible for any failing on the part of anyone else in the prison to notify [him] that the [plaintiff] needed care or for any action exhibiting deliberate indifference to the plaintiff's needs." (Id., p. 7.)

Plaintiff filed his Response to Dr. Williamson's Motion for Summary Judgment on July 28, 2004. (Document No. 35.) Plaintiff states that Dr. Williamson never advised him how to seek further medical care. (Id., p. 1.) Rather, he cautioned Plaintiff that if his eye continued to swell, the stitches may need adjusted. (Id., p. 2.) Plaintiff avers that his eye continued to swell and remained swollen for approximately one week. (Id.) On at least two occasions during this one week period of time, he verbally informed nurses of his requests for further medical attention, which requests went unanswered. (Id.) He states that the nurses telephoned Dr. Williamson at home and left written notices for him indicating that Plaintiff required further medical attention. (Id.) Dr. Williamson, however, never responded to any of Plaintiff's requests for care. (Id.)

On August 9, 2004, Dr. Williamson filed his Rebuttal Brief in Support of his Motion for Summary Judgment. (Document No. 37.) He contends that the evidence demonstrates that he examined Plaintiff's injury and provided reasonable care at the time of his injury. (Id., p. 1.) Plaintiff

9

has not demonstrated that he knew of Plaintiff's requests for further medical care. (Id.) Although he alleges that the nurses attempted to contact him and left messages for him concerning Plaintiff's medical complaints, Plaintiff has not demonstrated that he actually received the messages. (Id., p. 2.) Thus, no genuine issues of material fact exist and he is therefore, entitled to judgment as a matter of law. (Id.)

Plaintiff filed on August 13, 2004, his Affidavit in support of his response to Dr. Williamson's Motion for Summary Judgment. (Document No. 38.) Plaintiff states that Dr. Williamson never advised him that he may experience periods of unconsciousness or informed him how to obtain further medical care. (Id., ¶ 1.) He further reiterates that he conveyed his medical complaints and requests to nurses who then left messages for Dr. Williamson that went unanswered. (Id., ¶¶ 2-4.) Although he was aware that MOCC required that medical request forms be completed, he did not use these forms because he believed the forms were to be used for non-emergency situations, unlike his medical concerns which required immediate attention. (Id., ¶ 5.)

## APPLICABLE STANDARDS

### Motion to Dismiss

The Fourth Circuit Court of Appeals stated the standard for considering a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in a § 1983 case as follows in Revene v. Charles County Comm'n, 882 F.2d 870, 872 (4th Cir. 1989):

> In actions under 42 U.S.C. § 1983, as generally, a motion to dismiss pursuant to Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts to support [his] allegations. (Citations omitted) As the Supreme Court has stated in another § 1983 case
>
> > [w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately

10

prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Dismissal is therefore proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 1356, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element

11

of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies with respect to claims of prison conditions, prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law,"though the administrative process may not afford them the relief they might obtain through civil proceedings.[7] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.). The PLRA exhaustion requirement

---

[7] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

applies with equal force to § 1983 and <u>Bivens</u> actions. <u>See Yousef v. Reno</u>, 254 F.3d 1214, 1218 (10th Cir. 2001)(PLRA's exhaustion requirement applies to <u>Bivens</u> claims); <u>Nyhuis v. Reno</u>, 204 F.3d 65, 68-69 (3d Cir. 2000)(1997e(a) applies equally to § 1983 and <u>Bivens</u> actions).

Section 1997e(a) suggests that exhaustion of administrative remedies is a prerequisite to the Court's jurisdiction, but Circuit Courts have held that administrative exhaustion is not a jurisdictional requirement. <u>See Perez v. Wisconsin Dept. of Corr.</u>, 182 F.3d 532, 536-37 (7th Cir. 1999); <u>Underwood v. Wilson</u>, 151 F.3d 292, 294 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); <u>Wright v. Morris</u>, 111 F.3d 414, 421(6th Cir.), *cert. denied*, 522 U.S. 906, 118 S.Ct. 263,139 L.Ed.2d 190 (1997); <u>Nyhuis v. Reno</u>, 204 F.3d at 69, n. 4. At least one District Court in the Fourth Circuit has followed suit. Citing <u>Underwood v. Wilson</u>, Judge Kiser noted in <u>Johnson v. True</u>, 125 F.Supp.2d 186, 188 (W.D.Va. 2000), that "§ 1997e(a) has not been found by the courts of this circuit to impose exhaustion of administrative remedies as a prerequisite to jurisdiction. Thus, the fact that there are claims within the complaint that may have been exhausted does not deprive this court of subject matter jurisdiction to rule on such claims."

The majority of the Circuits have held in the context of inmates' suits under § 1983 that the failure to exhaust administrative remedies is an affirmative defense under Rule 8(c)[8] of the Federal Rules of Civil Procedure like the defense of statute of limitations. <u>Jackson v. District of Columbia</u>,

---

[8] Listing certain traditionally recognized defenses, Rule 8(c) of the Federal Rules of Civil Procedure provides as follows:

**Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver and any other matter constituting an avoidance or affirmative defense.

254 F.3d 262, 267 (D.C. Cir. 2001); Casanova v. Dubois, 304 F.3d 75, 77, fn. 3 (1st Cir. 2002); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Jenkins v. Haubert 179 F.3d 19 (2d Cir. 1999); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 1999), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); Perez v. Wisconsin Dept. of Corr., 182 F.3d at 536;  Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001); cf. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir 2000), cert. denied, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000)(An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.") Likewise, with respect to Bivens actions, the Seventh Circuit Court of Appeals held in Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004), that "[a]lthough exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted).

It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(overruled on other grounds), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

14

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

Furthermore, available administrative remedies must be exhausted with respect to each claim against each Defendant or the Complaint must be dismissed under the "total exhaustion rule" found in § 1997e(a). See Quinones v. Rubenstein, Civil Action No. 5:02-1365 (S.D. W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action" as stated in § 1997e(a), the District Court concluded that no action shall be brought barring total exhaustion of each and every claim)(*citing* Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000); Givens v. City and County of San Francisco, 2002 WL 31478180, *2 (N.D. Cal. Nov. 5, 2002); Saunders v. Goord, 2002 WL 1751341, *3 (S.D. N.Y. Jul. 29, 2002)). In Quinones, Chief Judge Faber adopted the total exhaustion rule as applied to *habeas* actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar actions. (Id., p. 21.) (Id., p. 20.) The Court concluded that the total exhaustion rule "does not detrimentally affect plaintiff's available remedies . . .[r]ather dismissing the present [unexhausted] claims improves judicial economy by encouraging the plaintiff to reshape his complaint to include only cognizable claims." (Id., p. 22.)

Essentially, Plaintiff is alleging that the Defendants failed to provide adequate security, staff supervision, and adequate medical care, all in violation of the Eighth Amendment. These Eighth Amendment claims constitute challenges to Plaintiff's conditions of his confinement which must be administratively exhausted prior to seeking judicial review. See Wilson v. Seiter, 501 U.S. 294, 300,

15

n. 1, 111 S.Ct. 2321, 2325, n. 1, 115 L.Ed.2d 271 (1991)("[I]f an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement, whether or not the deprivation is inflicted upon everyone else."); Johnson v. Garraghty, 57 F.Supp.2d 321, 326 (E.D. Va. 1999)(Stating that the medical care an inmate receives is a condition of an inmate's confinement.); Davis v. Reilly, 324 F.Supp.2d 361, 365 (E.D. N.Y. 2004)(Finding that claims of deliberate indifference to inmates' medical care in violation of the Eighth Amendment fall within the meaning of the PLRA exhaustion requirement.). To exhaust properly available administrative remedies, "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters. (Document No. 13, Exhibit 2.) Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. (Id., pp. 4-5.) The Unit Manager must respond to the inmate's Grievance within five business days. (Id., p. 5.) If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. (Id., p. 6.)The Warden/Administrator must respond to the appeal, in writing, within five working days. (Id.) If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. (Id.) If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. (Id., pp. 6-7.) The administrative process is exhausted

16

when the Commissioner responds to the inmate's final appeal. (Id., p. 7.)

It is clear that Plaintiff failed to exhaust his administrative remedies respecting his Eighth Amendment claims. Plaintiff's response to the State Defendants' Motion reveals his mistaken belief that challenges to issues of medical care are exhausted after submitting a grievance to the Medical Department Administrator, which Plaintiff did. As already discussed, challenges to issues of medical care constitute challenges to the inmate's conditions of confinement, which must be administratively exhausted under the PLRA.[9] Drawing all inferences in the light most favorable to Plaintiff it is undeniable that Plaintiff may have required immediate medical assistance throughout the night on November 7, 2003. Nevertheless, to obtain judicial review of medical care claims, Plaintiff was required to submit his complaints through the entire administrative remedy process. Plaintiff began the administrative review process by submitting his grievance to the Medical Administrator, but then abandoned the process prior to completion.

Likewise, the undersigned finds that Plaintiff has not completely exhausted his administrative remedies with respect to his claims that the Defendants failed to provide adequate security and supervision. Plaintiff submitted G-1 Grievance Forms to Michael Coleman and his Unit Manager, complaining that Defendant Peggy Giacomo did nothing to prevent the assault by Inmate Heard and that Inmate Heard was not punished for his misconduct. He further submitted a G-2 Grievance Form

---

[9] It is significant to note here that although Plaintiff alleges that he did not pursue the administrative remedy process because he required immediate medical attention, he could have completely exhausted his claims during the time from when he was allegedly denied medical care until he filed his Complaint on January 27, 2004. More importantly, he is not asking the Court to order that he receive certain medical treatment. Rather he is seeking compensatory and punitive damages for the alleged constitutional violations. If immediate medical attention was required in November, 2003, Plaintiff could have requested immediate injunctive relief from this Court and his administrative remedies would most likely have been deemed exhausted for purposes of the requested relief.

17

which was rejected by Defendant Warden McBride because Plaintiff's complaints concerned his disciplinary actions. He then appealed the Warden's decision to the Commissioner, but addressed in his appeal only the issue that Inmate Heard was not punished for attacking him. His appeal was denied as procedurally barred. Assuming that Plaintiff's claims were not procedurally barred at the administrative level, it is clear that the grievances addressed only Defendant Peggy Giacomo's actions, which were not presented at each level of administrative review, and the issue that Inmate Heard was not punished. Plaintiff did not separately allege in his administrative grievances at the appropriate stages that the remaining Defendants violated his Eighth Amendment rights. In view of these circumstances, the undersigned finds that Plaintiff did not exhaust his administrative remedies with respect to any of his claims and therefore, his Complaint must be dismissed for failure to exhaust under § 1997e(a). Because the undersigned recommends dismissal of Plaintiff's Complaint for failure to exhaust administrative remedies, the undersigned does not address Defendant Dr. Williamson's Motion for Summary Judgment and further recommends that the same be denied as moot.

### 2. Plaintiff's Motion for Default Judgment

Plaintiff alleges that he is entitled to Default Judgment against Defendant Dr. Williamson for his failure to file timely an Answer or other response to his Complaint. (Document No. 22.) Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Upon motion and notice to the party against whom judgment by default is sought, either the Clerk or the Court, in its discretion, may enter judgment by default. Fed. R. Civ. P. 55(b).

Rule 55(b) provides as follows:

> **(b) Judgment**. Judgment by default may be entered as follows:
>
> **(1) By the Clerk.** When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.
>
> **(2) By the court.** In all other cases the party entitled to a judgment shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

The Return of Service Form filed in this action indicates that service of process was effected on Dr. Williamson on February 24, 2004, by Plaintiff through MOCC inter-departmental mail. (Document No. 10.) Pursuant to Rule 12(a)(1)(A), Dr. Williamson had twenty days from February 24, 2004, specifically March 15, 2004, to file his Answer or other response to Plaintiff's Complaint. Fed.R.Civ.P. 12(a)(1)(A). The record reflects that Dr. Williamson's Answer, Motion to Dismiss, and Memorandum in Support were filed on March 15, 2004. (Document Nos. 18-20.) Apparently, Plaintiff has miscalculated the twenty-day period in which Dr. Williamson had to file his Answer. Accordingly, the undersigned finds that Dr. Williamson timely filed his Answer to Plaintiff's Complaint and therefore, Plaintiff's Motion for Default Judgment must be denied.

19

### 3.  **Plaintiff's Motion for Injunction**

In considering whether to issue an injunction, the District Court must balance the hardships

likely to befall the parties if the injunction is, or is not, granted. Blackwelder Furniture Co. v. Seilig

Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District

Court to weigh the relative importance of four factors:

> (1)  the likelihood of irreparable harm to the plaintiff if the preliminary injunction
> is denied;
> (2)  the likelihood of harm to the defendant if the requested relief is granted;
> (3)  the likelihood that the plaintiff will succeed on the merits; and
> (4)  the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (*quoting* Rum Creek Coal Sales, Inc., v.

Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step

in the analysis. Blackwelder, 550 F.2d at 196. If the District Court concludes that the balance of the

potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are

presented; and plaintiff need not show a likelihood of success." Id.

Plaintiff's Motion for Injunction must fail on substantive grounds. Beginning with the first

two factors in the Blackwelder analysis, Plaintiff has failed to allege either irreparable harm to

himself if the requested injunction is denied or a lack of harm to the Defendants if the requested

injunction should issue. In fact, after balancing the first two factors, the Court finds that the harm to

the Defendants clearly outweighs the alleged harm to the Plaintiff.[10] Plaintiff avers that the

---

[10] The Fourth Circuit stated in *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994):

> [S]weeping intervention in the management of state prisons is rarely
> appropriate when exercising the equitable powers of the federal courts. This
> is true where conditions at the prison have been adjudged unconstitutional
> following trial on the merits. It is especially true where mandatory injunctive
> relief is sought and only preliminary findings as to the plaintiffs' likelihood

Defendants, collectively, and their subordinates, have filed false disciplinary violation reports on him as a means of preventing him access to the MOCC law library, in retaliation to his filing this civil action. He further contends that in response to filing this action, Magistrate Kerns is exhibiting bias during his disciplinary proceedings, by refusing to provide Plaintiff with a copy of MOCC rules prior to his hearing and then refusing to continue the hearing to allow Plaintiff time to prepare his defense. A prison official's retaliation against an inmate for exercising his constitutional right of access to the Court establishes a constitutional violation for a claim under § 1983. See Hudspeth v. Figgins, 584 F.2d 1345, 1347-48 (4th Cir. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); American Civil Liberties Union of Maryland, Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). To prevail on a claim of retaliation, Plaintiff must demonstrate "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 F.2d 227 (1995). Plaintiff asserts that because disciplinary charges were filed on him resulting in his confinement in Detention, his placement therein was in retaliation to filing suit in this District Court. Likewise, he asserts that Magistrate Kern's failure to provide him with a copy of certain MOCC rules prior to his disciplinary hearing and subsequent refusal to grant him a continuance was in retaliation to filing this action. Bare assertions of retaliation however, do not arise to the level of a constitutional violation. See Adams, 40 F.3d at 74; White v. White, 886

---

of success on the merits have been made.

In view of this pronouncement of the Fourth Circuit, State Courts are more suited and capable in considering the interests of the parties where injunctions and other special or equitable remedies are sough against State agencies.

21

F.2d 721, 723 (4th Cir. 1989). Plaintiff has not demonstrated any connection between the alleged occurrences and the filing of this civil action. Accordingly, the undersigned does not find, based upon the alleged occurrences of retaliation as stated in his Motion for Injunction, that he will suffer any injury, loss, or damage if the injunction is not issued. Although Plaintiff need not wait until he is actually injured to receive his requested relief, the Court finds that there is no risk that Plaintiff has or will suffer a "serious or significant physical or mental injury" or has or will suffer immediate and irreparable injury, loss or damage. Granting such an injunction at this time would certainly eliminate the discretion of prison officials in effectively investigating and disciplining inmate misconduct as they deem proper.[11] Accordingly, Plaintiff's Motion for Injunction should be denied.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the State Defendants' Motion to Dismiss (Document No. 12.), **GRANT** Defendant Dr. Williamson's Motion to Dismiss (Document No. 19.), **DENY as moot** Defendant Dr. Williamson's Motion for Summary Judgment (Document No. 32.), **DENY** Plaintiff's Motion for Entry of Default as to Larry Williamson

---

[11] The Fourth Circuit stated in *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994):

[S]weeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. This is true where conditions at the prison have been adjudged unconstitutional following trial on the merits. It is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiffs' likelihood of success on the merits have been made.

In view of this pronouncement of the Fourth Circuit, State Courts are more suited and capable in considering the interests of the parties where injunctions and other special or equitable remedies are sough against State agencies.

(Document No. 22.), **DENY** Plaintiff's Motion for Injunction (Document No. 29.), **DISMISS** this case without prejudice and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(c) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff.

ENTER: January 5, 2005.

R. Clarke VanDervort
United States Magistrate Judge

23